JS-6

O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN C. PENTZ, MEXICO DESARROLLOS SOCIOS S. DE R.L. DE C.V., <br><br> Plaintiffs, <br><br> vs. <br><br> KIMCO REALTY CORPORATION, <br><br> Defendant. | CASE NO. 8:11-CV-00111-JST (FMOx) <br><br> **ORDER GRANTING MOTION TO REMAND FOR LACK OF SUBJECT MATTER JURISDICTION** |

Before the Court is Plaintiffs John C. Pentz's ("Pentz") and Mexico Desarrollos Socios S. De R.L. De C.V.'s (collectively "Plaintiffs") Motion to Remand. (Doc. 10.) Defendant Kimco Realty Corporation ("Defendant") opposed the Motion and Plaintiffs replied.[1]  (Docs. 31, 34.)  The Court finds this matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.  For the reasons set forth below, the Court GRANTS Plaintiffs' Motion to Remand and remands the case to Orange County Superior Court.

## I. Background

On December 17, 2010, Plaintiffs filed a breach of contract action against Defendant in Orange County Superior Court (case number 30-2010-00434300) alleging breach of implied contract, breach of the implied covenant of good faith and fair dealing, quasi contract, quantum meruit, and intentional interference with prospective business advantage related to a real estate joint venture in Mazatlan, Mexico.  (Doc. 1, Ex. 1.) Defendant, asserting diversity jurisdiction, removed the case to federal district court on January 20, 2010.  (Doc. 1)  Plaintiffs opposed removal and filed the instant Motion to Remand on February 11, 2010.

## II. Legal Standard

When reviewing a notice of removal, "it is to be presumed that a cause lies outside the limited jurisdiction of the federal courts and the burden of establishing the contrary

---

[1] Defendant originally filed its opposition to the Motion to Remand on February 22, 2011.  (Doc. 22.)  In its opposition, Defendant noted that on February 16, 2011, Defendant filed an ex parte application seeking expedited jurisdictional discovery and an extension of time to respond to Plaintiffs' Motion to Remand and that this ex parte application had not been ruled on. (Doc. 18.) On February 22, 2011, the Court granted Defendant's ex parte application, permitted Defendant to conduct limited jurisdictional discovery related to Pentz's domicile.  (Doc. 23.)  At the conclusion of this jurisdictional discovery, Defendant filed a superseding opposition on April 4, 2011.  (Doc. 31.)

2

rests upon the party asserting jurisdiction." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (quoting *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (internal quotation marks omitted)). Courts "strictly construe the removal statute against removal jurisdiction," thus "the defendant always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.* Moreover, removal is proper only in "state-court actions that originally could have been filed in federal court." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

**III. Discussion**

Plaintiffs argue that Pentz is domiciled in Mexico and therefore his inclusion divests the Court of subject matter jurisdiction. Defendant counters that Pentz is domiciled in California and complete diversity exists between the parties. As discussed below, the Court holds that Defendant fails to establish that Pentz is domiciled in California and, thus, the Court lacks subject matter jurisdiction over this case.

A. <u>Jurisdiction Under 28 U.S.C. § 1332</u>

Federal courts are vested with original jurisdiction over civil actions where the amount in controversy exceeds $75,000 and complete diversity exists between the parties. 28 U.S.C. § 1332.[2] Under 28 U.S.C. section 1332, complete diversity exists in a suit

---

[2] Under 28 U.S.C. § 1332:

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--
> (1) citizens of different States;
> (2) citizens of a State and citizens or subjects of a foreign state;
> (footnote continued)

3

between: (1) citizens of different states; (2) citizens of a state and citizens of a foreign state; (3) citizens of different states in which citizens of a foreign state are an additional party; and (4) a foreign state as plaintiff and citizens of a state. *Id.* "In order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States and be domiciled within the State." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989). Thus, a United States citizen that is domiciled in a foreign country is neither a "citizen" of a state nor an "alien" as contemplated by the diversity statute. *Id.* at 828-29. Such a person is deemed to be "stateless" and their inclusion in a lawsuit destroys complete diversity. *Id.*; *see also Brady v. Brown*, 51 F.3d 810, 815 (9th Cir. 1995). Accordingly, as Pentz is a United States citizen, the Court's subject matter jurisdiction turns on Pentz's domicile – if Pentz is domiciled in Mexico, then complete diversity is destroyed, but if he is domiciled in California, diversity exists and federal jurisdiction is proper.

B. Domicile

"A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." *Id.*; *see also State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("Residence alone is not the equivalent of citizenship, but the place of residence is *prima facie* the domicile."). "Residence is physical, whereas domicile is generally a compound of physical presence plus an intention to make a certain definite place one's permanent abode, though, to be

---

(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
(4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

28 U.S.C. § 1332(a).

sure, domicile often hangs on the slender thread of intent alone, as for instance where one is a wanderer over the earth." *Weible v. United States*, 244 F.2d 158, 163 (9th Cir. 1957).

In *Lew v. Moss*, the Ninth Circuit set out a framework for determining domicile for the purposes of citizenship under the diversity statute. 797 F.2d 747, 749-50 (9th Cir. 1986). First, *Lew* set out four principles to guide an inquiry into citizenship under the diversity statute: (1) the party asserting diversity jurisdiction bears the burden of proof; (2) a person is domiciled in a location where he or she has established a fixed habitation in a particular place and intends to remain there indefinitely; (3) the existence of domicile for purposes of diversity is determined as of the time the lawsuit is filed; and (4) a person's old domicile is not lost until a new one is acquired. *Id.* Second, the court in *Lew* noted that:

> Courts in other jurisdictions have recognized additional principles relevant to our present analysis. The courts have held that the determination of an individual's domicile involves a number of factors (no single factor controlling), including: current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes.

*Id.* at 750. With these principles in mind, the *Lew* court proceeded to analyze domicile based upon the burden of production and the burden proof, finding that the burden of production initially rested with the opponent of diversity jurisdiction while the burden of proof remained at all times with the party seeking to establish diversity jurisdiction.

Here, Plaintiffs bear the initial burden of production because of the presumption that one's old domicile is not lost until a new domicile is established and Defendant bears the burden of proof as the proponent of diversity jurisdiction. *See id.* at 751 ("The presumption in favor of [diversity opponent]'s established domicile (California) as against

5

his allegedly newly acquired one (Hong Kong) plainly applies here."). The burden of production requires that Plaintiffs "produce enough evidence to avoid a directed verdict." *Id.* The burden the proof requires that Defendant "prove or disprove the existence of the disputed fact." *Id.* Using the framework set out in *Lew*, the Court finds that Plaintiffs satisfy their initial burden of production and Defendant fails to satisfy their burden of proof.

### C. Burden of Production

Pentz declares that, although he is a United States citizen, he is a permanent resident of Mexico and therefore domiciled there. (Declaration of John C. Pentz in Support of Motion for Remand ("Pentz Remand Decl."), Doc. 11 ¶ 2.) In 2005, Pentz sold his home in Newport Beach, California. (*Id.* ¶ 4.) Shortly thereafter, Pentz purchased a large tract of land in Baja California Sur, Mexico and had a 10,000 square-foot custom home built on the property. (*Id.* ¶¶ 3-4.) Pentz and his wife "permanently relocated to Mexico in 2008" and he estimates that he spends "85% to 90% of [his] time in Mexico." (*Id.* ¶ 4.) Additionally, Pentz states that he: (1) keeps the majority of his valuables and other personal property in Mexico; (2) keeps a boat in Mexico; (3) registered and maintains two automobiles in Mexico; (4) is a member of a golf course in Mexico; (5) maintains personal and business bank accounts in Mexico; (6) established eight companies under Mexican laws; (7) has over 50% of his investments and business interest in Mexico; (8) pays taxes in Mexico; and (9) has filed non-resident tax returns in California. (*Id.* ¶¶ 5-7, 10.) Plaintiffs support Pentz's declaration with documentary evidence, including a copy of Pentz's Mexican legal permanent resident identification card (Declaration of John C. Pentz in Support of Reply ("Pentz Reply Decl."), Doc. 36, Ex. B); a copy of Pentz's 2009 California Nonresident tax return (*id.*, Ex. Q); a copy of Pentz's 2008 California Resident tax return (*id.*, Ex. R); and a copy of a November 24, 2008 email from Pentz to his

accountant within which Pentz states that "My wife and I love Mexico and live there 70 percent of our time now" (*id.*, Ex. V).

A directed verdict "is not proper if there is substantial evidence to support a verdict for the non-moving party." *Lew*, 797 F.2d at 752. Here, Plaintiffs have provided substantial evidence sufficient to survive a directed verdict. Because Plaintiffs have met their burden, the Court considers whether Defendant met its burden of proof.

### D. Defendant's Burden of Proof

Defendant argues that Pentz is domiciled in California based on personal, professional, and property ties to California. Pentz was born and raised in California and continued to be domiciled in California until at least 2008. (Declaration of Alan A. Greenberg in Support of Kimco Realty Corporation's Superseding Opposition, Deposition of John C. Pentz ("Pentz Dep."), Doc. 31-1, Ex. A at 9:7-10:14, 20:4-21:9.) Pentz's father, stepmother, sister, brother, and son all live in Orange County. (Pentz Dep. at 14:5-15:11). Pentz owns[3] a condominium in Newport Beach that is directly below a condominium unit occupied by Pentz's father and stepmother. (Pentz Dep. at 21:24-22:4.) Pentz maintains sufficient clothing and supplies at the condominium that he does not pack a suitcase when he travels to California. (Pentz Dep. at 70:2-16). Pentz also maintains: (1) a California driver's license (*id.* at 24:1-3); (2) two automobiles registered in California (*id.* at 49:13-50:25); (3) a cell phone with an Orange County area code (*id.* at 61:6-8); (4) a United States-based health insurance policy (*id.* at 25:5-6); (5) a United States-based personal physician (*id.* at 26:21-23); (6) a California-based lawyer (*id.* at 28:9-10); (7) a California real estate broker's license (*id.* at 33:3-6); (8) California bank accounts (*id.* at 52:16-18);

---

[3] Many of the assets discussed by Plaintiffs and Defendant are owned by, or registered to, various corporate, business, or tax entities (e.g. Pentz & Partners, Inc., Pentz Living Trust) that are in turn owned and controlled by Pentz and his family. For the sake of clarity, and because there is no indication that anyone other than Pentz exercises control over these various companies and assets, the Court treats these assets as being owed by Pentz.

7

(9) a membership with the Balboa Yacht Club (*id.* at 22:14-16); (10) a registered address for service of his California-based companies (*id.* at 43:18-21; 45:10-16; 47:23-25; 49:7-9); and (11) 40% of his investments in California (*id.* at 28:16-22). These factors, however, appear more indicative of Pentz's financial resources than his established domicile.

At best, Defendant establishes that Pentz has substantial property and connections in both Mexico and California. Pentz owns a roughly 1,800 square-foot condo in Newport Beach and a 10,000 square-foot, custom-built home in Mexico. (Pentz. Dep. 57:16-18; Pentz Remand Decl. ¶ 3.) Pentz maintains two automobiles in California and two automobiles in Mexico. Pentz maintains a boat in Mexico and owns a private plane with a pilot based in Mexico. (Pentz Dep. 16:19-17:19:8.) Additionally, Pentz has bank accounts, a cell phone, ties to the community, and substantial business interests in both Mexico and California. The fact that Pentz maintains a California based physician, lawyer, and health insurance policy may be based as much on quality and personal preference as domicile. Pentz's California driver's license, likewise, does not necessarily prove California domicile as this same license allows Pentz to drive in Mexico and it is apparent that Pentz drives and spends substantial time in California. (Pentz Dep. 24:15-25:4.)

Most telling of Pentz's intent to establish a new domicile are his tax and voting records. On November 24, 2008, two years before this lawsuit was initiated, Pentz wrote to his accountant stating: "We are thinking dual [citizenship] but looking at the tax plays. My wife and I love Mexico and live there 70 percent of our time now. The majority of our assets are also in Mexico." (Pentz Reply Decl., Ex. V.) Thereafter, for the 2008 tax year, Pentz filed his tax returns as a California resident. (*Id.*, Ex. R.) The following year, Pentz filed his 2009 tax returns as a California Nonresident. (*Id.*, Ex. Q.) Pentz's tax filings indicate intent to change his domicile from California to Mexico. *See Murphy*, 314 U.S. at 455 ("It is not an unreasonable burden upon the individual, who knows best whence he

came, what he left behind, and his own attitudes, to require him to establish domicile elsewhere if he is to escape the tax.")

On June 7, 1994, Pentz voted in the California primary election; thereafter, Pentz appears to have voted in every primary, special, and general election from 1994 up to and including a California statewide special election on May 19, 2009. (Greenberg Decl., Ex. B at 75.) Pentz did not vote in the June 8, 2010 California primary or the November 2, 2010 general election. (*Id.*) Pentz's voting behavior – i.e. fifteen consecutive years of consistent voting followed by an abrupt absence – provides further indication that Pentz changed his domicile to Mexico. *See Murphy*, 314 U.S. at 456 ("Whether or not one votes where he claims domicile is highly relevant but by no means controlling.")

In summary, the Court holds that Defendant has failed to meet its burden of proving that Pentz is domiciled in California. Pentz and his wife sold their house in California and built a custom home in Mexico. Pentz and his wife have both obtained permanent residency status in Mexico and spend the majority of their time in Mexico. Although Pentz maintains significant ties to California, including a condominium, two automobiles, a driver's license, personal and professional relationships, and significant investments, Pentz appears to have demonstrated his intent to change his domicile by changing his tax status with the state of California and ceasing to vote in California after fifteen consecutive years of voting.

E. Pentz is Not a "Sham Plaintiff"

Alternatively, Defendant alleges that Pentz is a "sham plaintiff" and therefore his citizenship should be ignored for the purposes of establishing diversity jurisdiction. Defendant does not cite to any case law that supports the proposition that a court may disregard a *plaintiff* for the purposes of establishing jurisdiction over a removed case. Rather the case law that Defendant relies upon concerns sham *defendants* and fraudulent joinder. *See McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)

("Fraudulent joinder is a term of art. If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent."); *Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998) ("[T]he defendant must demonstrate that there is no possibility that the plaintiff will be able to establish a cause of action in State court against the alleged sham defendant.").

Even assuming that the standard for an improper plaintiff is the same as for an improper defendant, Defendant fails to prove that "plaintiff fails to state a cause of action," *McCabe*, 811 F.2d at 1339, and that "there is no possibility that the plaintiff will be able to establish a cause of action," *Good*, 5 F. Supp. 2d at 807, against Defendant. *See Hess v. U.S. Surgical Corp.*, No. C 99-2118 MJJ, 1999 WL 638241 (N.D. Cal. Aug. 5, 1999) (citing to cases dealing with fraudulent defendants and finding that plaintiff was not a "sham plaintiff" and remanding case). As the allegations in the Complaint appear sufficient to state a claim for quantum meruit and Defendant failed in its opposition to even address Plaintiffs' claim for quantum meruit, Defendant has failed to prove that it is impossible for Pentz to recover against Defendant. *See Good*, 5 F. Supp. 2d at 807 ("The district court . . . must resolve all disputed questions of fact in favor of the Plaintiff.").

### F. Attorney Fees Under 28 U.S.C. § 1447

Plaintiffs have failed to demonstrate that they should be awarded attorney fees. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). However, "[t]he fact that an award of fees under § 1447(c) is left to the district court's discretion, with no heavy congressional thumb on either side of the scales, does not mean that no legal standard governs that discretion." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for

10

seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied." *Id.* at 711.  As discussed earlier, Pentz has substantial ties to California, including a condominium, two cars, a driver's license, a broker's license, and two bank accounts.  These substantial ties provide an objectively reasonable basis for Defendant to have sought removal and to have conducted jurisdictional discovery, therefore Plaintiffs' request for attorney fees is denied.

**IV.  Conclusion**

For the reasons set for above, the Court GRANTS Plaintiffs' Motion to Remand and remands the case to Orange County Superior Court (case number 30-2010-00434300).  Because the Court is without subject matter jurisdiction and must remand the case to state court, the Court does not address Defendant's Motion to Change Venue (Doc. 8) and Motion to Dismiss (Doc. 29).

It is so ordered.

DATED: April 21, 2011

**JOSEPHINE STATON TUCKER**
JOSEPHINE STATON TUCKER
UNITED STATES DISTRICT JUDGE